JANVIER, Judge.
This most confusing litigation results from a battle between two factions of a church organization, — The Bright Light Spiritual Love & Charity Missionary Ass’n, to which we shall hereafter refer as “Bright Light,” is or was a corporation organized under the non-profit corporation statutes of Louisiana. It acquired a piece of real estate which seems to have been a double cottage on one side of which services were conducted and on the other side of which the pastor, a woman, with her liusband resided.
The suit was brought in the. náme of the corporation by a Mrs. Lúly’ Larson who, however, is referred to by her attorney as Mrs. Lawson. It is alleged that 'one Eunice Lee, purporting to be president of the corporation and purporting to be acting under a resolution of the “Executive Board”, sold the said property to First Homestead Savings and’Homestead'Association which, in turn, purported to sell it to Daniel White, Sr.
It is also alleged that neither Eunice Lee nor Polite Vincent, — whose connection with the said sales or with anything else connected with the litigation is not shown— are not officers or members of the said church corporation, ancl that one, Nettie Wheeler was President of the corporation until her death and that thereafter the said Mrs. Luly Larson or Lawson was elected by the Executive Board.
The said Homestead Association and the-said Daniel White, Sr., are made parties defendant and it is prayed that there be judgment decreeing that the transfers of the property in the church corporation to the-Plomestead Association and by the Homestead Association to Daniel White, Sr., were, null' and void and that the church corporation is the sole owner of the property.
The Homestead Association filed" exceptions of no right of action, lack of “legal capacity to bring this action,” and “want of interest in these proceedings.” The exceptions of the Homestead Association were-maintained and the suit as against it was. dismissed. Plaintiff did not appeal from, that judgment. The other defendant, Daniel White,-Sr., also filed various exceptions. There was an' attempt to liquidate the church organization, and the plaintiff in this suit obtained, an order from the District Court preventing the Secretary of State-fromat that'time issuing a certificate showing the liquidation of the corporation.
In another division of the Civil District. Court there was a suit by Daniel White,. Sr., to obtain possession of the property from the surviving husband of the deceased, former Pastor of the church, and that suit was consolidated with this for the purpose of trial. At that stage of the proceedings-the Judge of the .Civil District Court rendered what is termed.a Per Curiam, which, reads as follows:
'“I believe that the best way to presently dispose of this matter is:
*121 “Firstly, to maintain the exception of no right of action in so far' as the First Homestead and Savings Association is concerned, and it is now so ordered, the costs to await the final determination of this case.
“Secondly, to overrule the exceptions filed by Daniel White, Sr.
"Thirdly, to order plaintiff to amend its petition praying for judgment against Daniel White, Sr., and the others claimed by him to have been members of the corporation.
“Fourthly, the other parties claiming to be members of the corporation should intervene in these proceedings, alleging and proving membership in the corporation.
“Fifthly, Alberta White and the others who received funds at the time of the sale of the property must justify the receipt of the funds by them, otherwise there will be a money judgment rendered against them in favor of those persons the court finds to have been members of the corporation.
“If any person who received money should be found to be due any money this matter can be taken care of in the final judgment.
“The plaintiff is granted 10 days within which to file a supplemental and amended petition, and the defendant, Daniel White, Sr., is granted the time prescribed by law from the time of service of the supplemental and amended petition to file his answer to the original and to the supplemental and amended petition.”
There was then a supplemental petition filed purportedly by the church corporation, the affidavit being signed this.time by Luly Lawson, and in this petition it was alleged that certain proceeds of the sale had been used by certain unauthorized persons who had “enriched themselves” and it was prayed that there be a moneyed judgment against these said authorized persons.
After a lengthy trial there was judgment dismissing the suit insofar as it. prayed for the nullity of the two transfers of property —one from the church corporation to the Homestead Association, and the other from the Homestead Association to ■ Daniel White, Sr. There was also judgment dismissing, as in case of nonsuit, the clainr for a moneyed judgment against the persons referred to, but reserving to the corporation all its rights in the event of the appointment of a judicial liquidator to institute action through the Attorney General of the State of Louisiana, and there was further judgment Recalling the judgment under which the Secretary of State had been ordered not to issue the certificate showing the liquidation of the corporation.
Two things are very clearly shown by this record — one''is that the person who brought the suit) purportedly on behalf of the corporation, has not been able to show her authority to act for the ' corporation. It is contended ‘ that the minutes of the corporation showing her authority were filed with* the Qerk of Court and have been lost. The other thing which is made very clear is that there is no proof of the legal authority of those who purportedly acted for the' corporation in selling the property. It is contended on their behalf that there are no minutes to show this authority because, when they attempted to, enter the church property to hold meetings, they were forcibly prevented from entering by the surviving husband of the former pastor and that, therefore, they went elsewhere to hold their meetings and no minutes could be presented.
We have carefully studied the record and have given particular attention to the lengthy per curiam prepared and handed down by the District Judge, and we think all the findings which he made and which are evidenced by that per curiam are justified by .the record.
The entire matter is so confusing, and this confusing is worse confounded by the absence of minutes, that we have concluded . that lengthy though. it is, the whole *122 story can best be tolii by a reproduction of the per curiam handed down by the District Judge:
“The court has carefully and diligently reviewed the records in these cases, has read the evidence adduced in April, 1951, which it ordered transcribed and filed in the record, and has gone over the evidence taken in- March, 1954, not yet transcribed.
“Because of the complicated nature of this case, the court is writing and rendering this per curiam so that counsel will have the benefit of its views, and may take whatever additional proceedings they desire, before the actual rendition of a judgment herein. The court does not desire to do anything which would impair the rights of any parties claiming an interest.
“On October 3, 1950, under the No. 300,397 of the docket of this Court, The Bright Light Spiritual Love & Charity Missionary Association filed suit against Daniel White, Sr., and the First Homestead and Savings Association, praying for the nullity of two purported acts of sale of the real property known as 417-19 Socrates Street, in the City of New Orleans.
“On October 6, 1950, under the No. 300-521 of the docket of this Court, Daniel White, Sr., filed suit; against Henry Wheeler, praying for' a judgment ordering Henry Wheeler to vacate and surrender the premises 417-19 Socrates Street, which latter cause was ordered consolidated with the former for the purpose of trial, separate judgments to be rendered in each case, as per judgment of Hon. Frank J. Stich, Judge of Division E of this Court, rendered October 27, 1950.
“For the purpose of brevity, plaintiff in suit No. 300,397 will be hereinafter . referred to as ‘Bright Light.’
“Bright Light alleges that it acquired the property involved herein by act before Frank Macheca, Notary Public, August 4, 1939; that, by two purported acts of sale before Frank Macheca, Notary Public, dated August 16, 1950, Eunice Lee, appearing as President of Bright Light, sold the property to First Homestead and Savings Association, and said Association then sold the property to Daniel White, Sr.
“That Eunice Lee appeared and signed the said act under the purported authority of a resolution of the Executive Board of Bright Light, alleged to have been held at 419 Socrates Street on June 30, 1950, authorizing the said Eunice Lee, as alleged President, to sell and transfer the property to Daniel White, Sr.
“A certified copy of this resolution has been filed in evidence. It is signed by Polite Vincent only, as Recording Secretary. The evidence preponderates to the effect that it was not adopted at 419 Socrates Street.
“Bright Light avers that neither Eunice Lee nor the said Polite Vincent are officers or members of the Executive Board of Bright Light.
“That Nettie Wheeler, wife of Henry Wheeler, was president of Bright Light from the time of its organization until her death on November 15,. 1949; that, upon the death of. Nettie Wheeler, the executive Board of Bright Light elected Mrs. Luly Larson.
“Daniel White, Sr., filed exceptions challenging plaintiff’s legal capacity to bring these proceedings, want of interest, and no right of action, all of which were overruled on April 3, 1951.
“First Homestead & Savings Association filed exceptions of no right of action, lack of legal capacity to bring this action, and lack of interest by plaintiff in these proceedings. On April 3, 1951, the exception of no right of action was maintained, and plaintiff’s suit dismissed as to First Homestead & Savings Association. No ap *123 peal was taken from this judgment; it is final.
“On April 17, 1951, Bright Light filed a supplemental and amended petition, praying for judgment against Alberta Ruffin, wife of Daniel White, Sr.; and Daniel White, Sr.; Polite Vincent, Eunice Pierce wife of Rubin Lee, Venus Washington Robertson and Carrie Joseph, in solido, in the sum of $1173.-93, interest, etc., alleging that they illegally conspired to bring about the sale and resale under attack herein, and, in doing so, enriched themselves in said amount, dividing the proceeds among, themselves.
“On May 30, 1951, upon the petition of Bright Light, the court issued an order directing the Secretary of State not to issue an order of dissolution of Bright Light until the final decision of this cause.
“On February 23, 1953, Alberta Ruf-fin, wife of Daniel White, Sr., Polite Vincent, Eunice Pierce, wife of Rubin Lee, Venus Washington Robertson and Carrie Joseph, filed exceptions of no cause or right of action, and vagueness, which were referred to the merits on February 27, 1953.
“Said exceptors filed their answer on March 24, 1953, denying the allegations of plaintiff’s original and supplemental petitions. On June 5, 1953, Daniel White, Sr., also answered said petitions, alleging in effect that both the First Homestead and himself were innocent purchasers and acted in perfect good faith in the purchase and acquisition- of the property. That Bright Light is guilty of laches and did not institute this suit until a notice to vacate the property was served upon Henry Wheeler (husband of Nettie Wheeler), who was never a member of the corporation. Henry Wheeler is the surviving husband of Nettie Wheeler. White prayed for judgment rejecting Bright Light’s demands, and in the alternative for a moneyed judgment.
“When the case was tried on the merits on March 15 and 16, 1954, it was stipulated that the testimony taken on April 2, and April 3, 1951, would be transcribed and filed in the record as part of the evidence upon the merits. This has been done.
“The evidence shows that Bright Light was incorporated by act before George S. Graham, Notary Public, July 18, 1939; the original incorpora-tors being the following: -
Nettie Wheeler (wife, .of Henry Wheeler).
Emma Washington
Polite (Polete) Vincent
Venus Robinson
Alberta (Albirtha) White
Carrie (Carry) Joseph, and
Eunice (Unies). Lee.
“The evidence further shows that Nettie' Wheeler, wife of Henry Wheeler and mother of Mrs. Alberta Ruf-fin, wife of Daniel White, Sr., was the head of Bright Light from the time of its incorporation until the date of her death, November 15, 1949.
“It is contended by defendants that Henry Wheeler was never a member of Bright Light, and attended services as a visitor; he denies this; however, he lived on one side of the property with Nettie Wheeler, his wife, until her death, the other side being used as a church.
“Alberta Ruffin White testified that since the death of her mother she and the other members of the Bright Light have not been allowed to get into the church by Henry Wheeler; that Polite Vincent has been Secretary from 1939 to 1949 (see her testimony April 2, 1951). For that reason the congregation met after the death of Nettie Wheeler, her mother, at Bishop Watson’s church.
“After the sale of the property the homestead debt was paid off, and she *124 and the others paid themselves the remaining funds.
“Polite Vincent testified that he did not attend any meetings of the church since 1943, and believed that he was the Secretary as he had never b.een removed. He never received notices of any meetings of the members where 'officers were to be elected. From" 1943 until the death of Nettie Wheeler he never attended a single meeting of the church. There was a meeting in January, 1950, to ‘dissolve the property and each one would get their portion.’
“Q. In other words, you and Alberta White and Eunice Lee and Carrie Joseph and Venus Robertson got together in January, 1950, and decided to sell the property and divide the money between you, is that right? ■ A. Yes, sir.
“Eunice Lee testified that she was President of the corporation, succeeding Nettie Wheeler. She testified that in August, 1950, the above persons decided to sell the church.
“Carrie Joseph, one of the witnesses for Bright Light, testified that William Mosely and Australia Mosely, his wife, are members of the church. This is significant, as they and others may have an interest in seeing that the funds are held or disposed of in accordance with the law hereunder cited. They can urge any claims in appropriate proceedings as hereinafter set forth.
“Alberta Ruffin White, Polite Vincent, Eunice Lee, Carrie Joseph and Venus Washington. Robertson, (some of the original incorporators) all testified. that Luly Larson was not a member of Bright Light.
“Luly Larson claims that she does not know the above named persons. The court was not impressed with the testimony of Luly Larson. When she was elected President, she did not aslc for the minute book to be shown to her so that she could read the minutes as to what took place in former years, and the court had to warn her that she was either not paying attention to the questions or purposely evading.
“No adequate and proper membership and minute books appear to have been kept.
“The charter provides that the officers remain the same until their successors are elected and qualified (Art. VII).
“Henry Wheeler, James Green, Reva May Martin and Carrie Green were heard on March 15, 1954. None are charter members.
“Wheeler testified on April 3, 1951, that he has been the pastor since his wife started the church. This is denied. On March 15, 1954, he testified to certain payments made by him, and as to when he first ascertained that the property was sold.
“James Green testified that he was the Treasurer. He is not corroborated by any minute entry. He appeared in court with a blue bag containing a lot of slip's purporting to be receipts he received when he turned over the money that he collected. He testified that he kept no books; that the only books kept were the receipts that he had in the bag; that he gave no receipts to the members from whom he collected dues.
“Reva May Martin testified that Green marks dues in a book arid that Green kept the books.
“Carrie Green testified that James Green would give a receipt to the members for their dues; that James Green keeps the books and records; that after Nettie Wheeler died the organization b.écáme more or less to a standstill.
“Wheeler and Green testified that the following were "members in 1950:
*125 James Green
Carrie Green
Marie Cooper
Rachel Johnson, deceased,
Olla Wig-gins
William Mosely
Australia Mosely
Dorothy Bush
Helen Bush
Ed Thomas, and Reva May Martin
“No receipts were produced by Carrie Green and Reva May Martin for dues that they claimed they paid.
“None of the above mentioned persons were called to testify on March 15 and 16, 1954, except the Greens, Wheeler and Reva May Martin.
“It is not contended that Daniel White, Sr,, is in bad faith; he has not been charged with fraud.
“The following parties appear to have received the following amounts at the time of the sale of the property:
Alberts Ruffin White, over $700.00
Polite Vincent, ■ $150.00
Carrie Joseph, $150.00
Euüice Lee, $150.00
Venus Washington Robinson, $150.00
“Alberta Ruffin White claimed that the over $700.00' received by her was both as a creditor and a stockholder. •The others received the $150.00 as either stockholders' or ' shareholders. There is no evidence as to the issuance of stock. The charter'is silent; it is also silent upon which membership in the corporation is based, whether dues or shares.
.“Considering the evidence as. a whple, it appears to. the court that it is compelled to uphold the sale tp White through the First Homestead; tl;at, if the above parties claimed to be mem-, bers by Wheeler, the Greens and Reva May Martin have any rights, they must assert them in liquidation proceedings to be filed, prove that they were mem-, bers, and compel those who received the above amounts to pay back into the liquidation the amounts received, to be dealt with according to law.
. “The objects and purposes of Bright Light are set forth in Article IV of the charter.
“This appears to be a religious corporation, which must be organized on a non-stock basis. [LSA-]R.S. 12:111.
“[LSA-]R.S. 12:141, [subd.] E, provides that in the case of a religious corporation, any surplus in excess of the corporation’s outstanding liabilities shall be transferred to a public or private corporation, association, or agency having similar purposes.
“[LSA-] R.S. 12:142, [subd.] B, provides :
“ ‘.If the corporation is prohibited by R.S. 12:141 (E) from distributing any surplus to the members, the resolution (to dissolve) must provide for the disposition of any surplus.’ (Parenthesis by the court.)
“[LSA-]R.S. 12:145 provides for the appointment of a judicial liquidator, and refers to [LSA-jR.S. 12:142.
“[LSA-]R.S. 12:149 provides for the order or certificate of dissolution, and the filing of same. The attention of the parties are called to the above cited articles 'of the Revised Statutes, as well as the Secretary of State, to whom a copy hereof is being mailed. * *■ * ”
The Court then' rendered the following reasons for'judgment:'
“The; court. has reviewed its per curiam of May 3, 1954, and has carefully considered the briefs filed.
“The court refers to its said per curiam in connection with these reasons, and states that it is impressed with the following factors and circumstances :
*126 “1. It is not contended that Daniel White, Sr., is in bad-faith; he has not been charged with fraud in the petition (per curiam, p. 6).
“2. The testimony of Luly Larson, with which the court was not impressed (per curiam, p. 5).
“3. No adequate and proper membership and minute books appear to have been kept (per curiam, p. S), and there is no affirmative proof that the parties mentioned on p.. 6 of the per curiam were members; none were called except the Greens, Wheeler, and Reva May Martin.
“4. The charter provides that the officers remain the same until their successors are elected and qualified (per curiam, p. 5).
“5. The conflicting testimony of Henry Wheeler, James Green, Reva May Martin and Carrie Green (per curiam, pi 5 and 6). If the parties claimed to be members by the foregoing persons have any rights, they must assert them as set out on p. 7 of the per curiam. See also Articles of Revised Statutes cited on p. 7. .
“Try as it will, the court cannot see where it should deviate from its opinion as set forth in the per curiam, except that, in cause No. 300,521, the judgment should not become executory until the judgment in cause No. 300,397 becomes final.
“The Minute Clerk has been instructed to make a sufficient amount of copies of the judgments to be rendered, to be mailed to counsel for the parties and the Secretary of State, with a copy of these reasons.”
Feeling that the judgment rendered is correct the' said judgment is áffirmed at the cost of appellant.
Affirmed.